UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. <u>10-60015-CR-COHN</u>

UNITED STATES OF AMERICA,

    **Plaintiff**

vs.

**DANIEL DROMERHAUSER,**

    **Defendant.**
_____/

## PLEA AGREEMENT

The United States of America and **DANIEL DROMERHAUSER** (hereinafter referred to as the "defendant") enter into the following agreement:

1.    The defendant agrees to plead guilty to Count One of the Superseding Indictment which charges conspiracy to obstruct justice in violation of Title 18, United States Code, Section 1512(k). The United States agrees to seek dismissal of the remaining counts of the Superseding Indictment, as to this defendant, after sentencing.

2.    As to Count One, the defendant understands and acknowledges that the maximum statutory sentence under Title 18, United States Code, Section 1512(k) is 20 years' imprisonment, followed by a term of supervised release of up to 5 years and a fine of up to $2,500,000.

3.    The defendant is aware that the sentence will be imposed by the court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by

the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

5. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government,

2

or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

6. The United States notes, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

    a. Base Offense Level: The applicable base offense level is a level 14 pursuant to Section §2J1.2.
    b. Specific Offense Characteristics: There are no applicable offense characteristics.
    c. Aggravating or Mitigating Role: There are no applicable aggravating or mitigating roles.

7. The United States agrees that it will recommend at sentencing that the court reduce by two (2) levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one (1) level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of

his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this motion if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant also agrees that the defendant shall assist this Office in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in all assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant or others to his/her knowledge have accumulated as a result of illegal activities. Such assistance will involve an agreement on defendant's part to the entry of an order enjoining the transfer or encumbrance of assets which may be identified as being subject to forfeiture. Additionally, defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to this Office upon this Office's request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property.

9. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange

for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

10. This Office and the defendant stipulate to and agree not to contest the following facts, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the plea of guilty in this case:

Beginning in or about November 8, 2009 and continuing until on or about March 10, 2010, in Broward and Palm Beach Counties, within the Southern District of Florida, and elsewhere, the defendant, Daniel Dromerhauser (Dromerhauser), knowingly and intentionally conspired with others, including but not limited to, Roberto Settineri (Settineri) and Enrique Ros (Ros) to corruptly destroy or conceal records, documents and other objects with the intent to impair the object's integrity and availability for use in an official proceeding and to otherwise obstruct, influence and impede any official proceeding.

On or about November 11, 2009, defendant Dromerhauser, at the direction of co-conspirator Settineri, met with co-conspirator Ros and a person acting under the direction of a Federal law enforcement officer (the cooperating source) in Coral Springs, Florida. During the course of this meeting, Ros, Dromerhauser and the cooperating source discussed Ros' and Domerhauser's assistance to the cooperating source in shredding documents represented to be subject to a grand jury

subpoena as well as concealing cash that the cooperating source had stolen in the approximate amount of $5 million. Immediately after this meeting, Ros and Dromerhauser met with Settineri in Miami, Florida and reported to defendant Settineri their discussion with the cooperating source.

On or about November 12, 2009, Ros and Dromerhauser met again with the cooperating source in Hollywood, Florida. An individual, known to Ros and Dromerhauser, was present at the location during the meeting to conduct counter-surveillance for Ros and Dromerhauser. During the course of this meeting, Ros told the cooperating source that they would be reporting back to Settineri. Ros and Dromerhauser discussed their assistance to the cooperating source in concealing money that the cooperating source had obtained in a Ponzi scheme, including the need to set up a "clean" bank account at a small bank. Ros told the cooperating source that $50,000 would be required to get things set up. Immediately after this meeting, Ros and Dromerhauser met with Settineri in Miami, Florida and reported to defendant Settineri their discussion with the cooperating source.

On or about November 16, 2009, Ros and Dromerhauser met again with the cooperating source in Fort Lauderdale, Florida. Two individuals, known to Ros and Dromerhauser, were present at the location during the meeting to conduct counter-surveillance for Ros and Dromerhauser. At this meeting the cooperating source provided Ros with $4,000 cash and told Ros to use the money to purchase a shredder. The cooperating source told Ros and Dromerhauser that there were two boxes of documents at a storage location in Cypress Creek that they needed to retrieve. Ros, Dromerhauser and the cooperating source also discussed the need for wire instructions in order to move the money. Later that same day, Ros, Dromerhauser, Settineri, and the cooperating source met in Plantation, Florida. Ros provided the cooperating source with a hat and coat, purchased earlier that day with Settineri, in order to conceal his identity. During the course of this meeting, Ros, Dromerhauser, Settineri and the cooperating source discussed specifics of moving the cooperating source's money, including details such as setting up multiple bank accounts, the use of false invoices, and the wiring of the funds. Ros, Dromerhauser, Settineri and the cooperating source also discussed the destruction of "grand jury documents." During the second meeting on November 16, 2009, the cooperating source gave Settineri $10,000 cash.

On or about November 18, 2009, Ros and Dromerhauser met with the cooperating source in Pompano Beach, Florida. Two individuals, known to Ros and Dromerhauser, were present at the location during the meeting to conduct counter-surveillance for Ros and Dromerhauser. Ros provided the cooperating source with wiring instructions to an account maintained by Ros. The cooperating source gave Ros $5,000 cash and told Ros that it was stolen from a "rich guy." During the course of this meeting, Ros got a telephone call from Settineri and after speaking to Settineri, Ros handed the telephone to the cooperating course who then had a telephone call with Settineri. Ros provided the cooperating source with a false contact for security services and Ros, Dromerhauser and the cooperating source discussed back-dating the contract. The cooperating source and Dromerhauser signed the document and it was dated October 1, 2009 at that time. The cooperating source provided Ros and Dromerhauser with a key and instructions to a storage location. Ros, Dromerhauser and another individual then drove to that location and removed two boxes containing

documents from the storage location. Ros and Dromerhause, along with another individual, took the documents to Settineri who was in Miami. Settineri discussed giving the documents to some associates from Palermo, Italy so that they could take the documents to Italy in order to hide them. Ros, Dromerhauser and the other individual then took the documents and made copies of them. Ros took possession of the original documents and Dromerhauser took the set of copied documents.

On November 19, 2009, Ros met with the cooperating source who gave him $50,000 cash. After this meeting, Ros and Dromerhauser met with Settineri in Miami, Florida. Inside a parked vehicle, Ros, Dromerhauser and Settineri counted the $50,000 cash. Ros then took $25,000 and Settineri took $25,000.

On November 23, 2009, Ros, Dromerhauser, Settineri and the cooperating source met in Plantation, Florida. During a portion of this meeting, another person acting under the direction of a Federal law enforcement officer (a second cooperating source) was present. During the course of this meeting, Ros, Dromerhauser, Settineri and the cooperating source discussed details for the movement of money, including the movement of $5 million into an account maintained by Ros and the movement of another $5 million into a second account. Ros stated that he had prepared false back-dated invoices totaling $1.6 million.

11.    This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings unless

//

//

//

//

//

//

//

//

//

contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 6/10/10         By: _____
                          CYNTHIA STONE
                          ASSISTANT UNITED STATES ATTORNEY

Date: 3 JUNE 10       By: _____
                          FRED HADDAD
                          COUNSEL FOR DEFENDANT

Date: 6/3/10          By: _____
                          DAVID J. BRAUN
                          COUNSEL FOR DEFENDANT

Date: 6/3/10          By: _____
                          DANIEL DROMERHAUSER
                          DEFENDANT

8